IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

                       Plaintiff,

      v.                                            OPINION and ORDER

KYLE ZENK, MICHAEL GLASS, CAPT. SCHULTZ,          22-cv-641-jdp
and SGT. PRICE,

                       Defendants.

---

Plaintiff Glen R. Jeffery, Jr., proceeding without counsel, is incarcerated at the Wisconsin Secure Program Facility. The events at issue occurred while Jeffrey was incarcerated at Columbia Correctional Institution (CCI). Jeffery alleges that defendant Kyle Zenk intentionally shut a food port door on his lip, and that Zenk and the other defendants deprived him of necessary medical care for the resulting injuries. Jeffery brings excessive force and medical care claims under the Eighth Amendment.

Defendants move for summary judgment. Dkt. 70. Many of the material events were captured on video. One reasonable interpretation of the recorded events is that Zenk saw Jeffery's face or lip in the food port and snapped its door shut without warning. That footage, coupled with Jeffery's statement that Zenk made a celebratory remark after shutting the door, suggests that he intentionally shut the door on Jeffery's lip to harm him. So, I will deny defendants' motion on Jeffery's excessive force claim against Zenk.

As for Jeffery's medical care claims, the video footage shows that lower lip swelling and discoloration were Jeffery's only visible injuries. Jeffery might have had more serious injuries on the inside of his lip, but there's no basis to infer that defendants Zenk, Michael Glass, or Sean Price noticed those injuries or thought that he needed immediate medical attention.

Because Jeffery hasn't shown that Zenk, Glass, or Price consciously disregarded his injuries, I will grant defendants' motion on his medical care claims against them.

The story is different for defendant Captain Gwen Schultz. Jeffery says that Schulz closely inspected the inside of his lip, noticed all his injuries, and promised to ensure that medical staff saw him. Jeffery says that Schultz never took that step, which suggests that she consciously disregarded his alleged injuries. I will deny defendants' motion on Jeffery's medical care claim against Schultz.

UNDISPUTED FACTS

The following facts are undisputed except where noted. If a party's declaration testimony is contradicted by the video evidence, I will accept facts shown in the video as undisputed. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The events at issue began in the morning of April 2021 in the Restrictive Housing Unit (RHU) at CCI. Defendant Kyle Zenk was an institution complaint examiner. Defendant Michael Glass was a unit manager. Defendant Sean Price was a correctional sergeant. Defendant Gwen Schultz was an administrative captain.

Inmate complaint examiner Zenk was in the RHU to collect inmate complaints. Non-defendant officer Luke Regoli told Zenk that Jeffery was holding his cell's food port door open. Jeffery was upset that officer Jackson was working in that unit because Jeffery had made a complaint against him under the Prison Rape Elimination Act. In the video footage, Jeffery is seen at times sticking his arm and hand through the food port, whose door and frame are metal. Dkt. 77-1 (0:50–2:16); Dkt. 75-2. At varying times, Jeffery is also seen putting his face very close to, and sticking his face partially through, the food port. Dkt. 77-1 (1:46–6:04). Holding

2

a food port door open poses security risks for prison staff, including being grabbed by prisoners and having things thrown at them.

After speaking with Jackson, Zenk went to Jeffery's cell and, upon arriving, quickly closed the food port door. *Id.* (6:03–05). The video shows Jeffery's face very close to, but not sticking through, the food port when Zenk closes it. *Id.* (6:03–04). The parties dispute whether any part of Jeffery's face was actually in the food port when Zenk closed the door, though it's undisputed that Zenk saw Jeffery in the cell when he closed the door. Dkt. 77-6 (0:08–16, 1:36–38, 5:04). Zenk then locked the food port and walked away. Dkt. 77-1 (6:05–09). The parties dispute whether Zenk exclaimed "Ah, gotcha" when he closed the food port door, and the video of that encounter lacks audio to confirm or negate Jeffery's allegation that Zenk made this remark.

Jeffery states that, when Zenk closed the food port door, his lip was caught between the door and the frame. Jeffery further states that he had to rip his lip free, which tore it, caused it to swell and bleed, and caused him extreme pain.

After Zenk closed the food port door, Jeffery started yelling. The parties dispute what Jeffery said exactly, but it's undisputed that he told Zenk that he tore his lip. Zenk briefly walked away from the cell and, when he returned, Jeffery again stated that he closed the door on his lip. The parties dispute whether Zenk initially noticed anything wrong with Jeffery's lip, and whether Jeffery asked Zenk for medical attention at that time.

Officer Regoli went to Jeffery's cell. Jeffery said that Zenk smashed his lip in the food port and suggested that he would cut himself with an object if he didn't receive assistance. Dkt. 77-2 (0:04–19). Regoli then told Sergeant Price that Jeffery accused Zenk of slamming his food port door on his bottom lip, and that he wanted to be seen by Health Services Unit

3

(HSU) staff. Around that time, Regoli told Price that Jeffery cut himself above his right eye. It's unclear from the record whether Jeffery cut himself after the incident with Zenk or if he had a preexisting wound above his eyebrow. Either way, Price thought that the cut to Jeffery's eye was an act of self-harm unrelated to Zenk's closing of the food port door.

A short while later, Jeffery was taken to the RHU interview room. Regoli initially told Jeffery that he had informed Price that his lip was "swelling," and Regoli later said that he told Price that his lip was "busted." Dkt. 77-5 (4:30–33); Dkt. 77-6 (18:28–32).

Approximately 30 minutes later, defendant unit manager Glass arrived at the RHU to conduct rounds. Price told Glass that Jeffery was acting out because Zenk allegedly closed the food port door on his lip. Glass noticed that Jeffery's lip was puffy. Jeffery states that Glass didn't observe his lip "up close" and, thus, didn't see that the inside of his lip was ripped and bleeding and contained "blood clots" (I take blood clots to mean bruises). Along those lines, Jeffery states that he was swallowing the blood on the inside of his lip because he believed that, if he got blood on corrections staff, he could be charged with a crime. Dkt. 86 ¶ 37. Jeffrey says that the bleeding was heavy enough that he was "sucking the blood down" to stop it from leaking from his mouth. *See id.* Glass told Jeffery to submit an HSU request for his lip problem, and Glass later discussed the situation with defendant Captain Schultz.

Later that morning, Schultz entered the RHU and asked why Jeffery was sitting in the interview room. Shultz noticed that Jeffery's lip was swollen and asked him what happened. It's undisputed that Jeffery told Schultz that Zenk closed the food port door on his lip. Other details of the conversation are disputed. Jeffery says that he showed Schultz all of the injuries to his lip, including those on the inside. Schultz says that she told Jeffery that she would call the HSU to report his swollen bottom lip. Jeffery's version is a little different: he says that

Schultz assured him that HSU staff would see him. The parties dispute whether Schultz ultimately contacted HSU staff, but Jeffery wasn't immediately seen by HSU staff.

Jeffery's lips are visible at times in the video footage, particularly right after he was taken to the interview room. Dkt. 77-5 (2:57 to 3:01). In that footage, Jeffery's bottom lip appears to be swollen and discolored, but no blood or other injury is apparent. Jeffery displays no obvious sign of pain or other medical distress in any of the video footage.

Later that day, around 3:00 p.m., Jeffery was in the HSU. The record of this visit states that Jeffery complained that an officer closed the food port door on his lip. Dkt. 73-1 at 2. The record also states that: (1) Jeffery's bottom left lip was moderately swollen and bluish with moderate pain; and (2) Jeffery declined acetaminophen but received ice for comfort. *Id.* at 2–3. But Jeffery says that this record is fabricated because he received care for only his eyebrow wound on that date. Dkt. 86 ¶ 39; Dkt. 86-2 at 1, 3.

I will discuss additional facts as they become relevant to the analysis.


ANALYSIS

**A.  Excessive force claim**

Jeffery contends that Zenk used excessive force on him by intentionally shutting the food port door on his lip. To establish a claim for excessive force based on a prison official's use of force, the prisoner must show that the official applied the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Even if a prison official's use of force causes a prisoner objectively serious injury, the use of force violates the Eighth Amendment only if the official used force maliciously and sadistically for the purpose of harming the prisoner. *Harper*

*v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). Courts should consider all the circumstances, including "the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); Fed. Civ. Jury Instr. 7th Cir. 7.18 (2017).

A reasonable juror could find that Zenk closed the food port door on Jeffery's lip with the intent to harm him, not accidentally or in a good-faith effort to restore discipline. Jeffery sustained at least swelling and discoloration to his lip right after Zenk closed the food port door which, contrary to Zenk's contention, is evidence that his lip was in the food port at that time. Furthermore, Jeffery states that Zenk saw that his face or lip was partially in the food port and snapped it shut without giving him any warning to remove it, and the events captured on video are arguably consistent with this statement. Dkt. 77-1 (6:03–05). The video footage does not, contrary to Zenk's contention, contradict Jeffery's statement that his face or lip was in the food port when Zenk closed the door. Also, Jeffery states that Zenk exclaimed "Ah, gotcha" when he took that action. This ostensibly celebratory remark, coupled with the evidence that Zenk closed the food port door without warning even though Jeffery's face or lip was in it, suggests that he committed that conduct with the intent to harm Jeffery.

Relying on *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001), Zenk contends that he "had a legitimate security interest in closing Jeffery's trap door." Dkt. 71 at 17. In *Outlaw*, the court granted summary judgment to correctional officers accused of using excessive force on a prisoner by closing a food port door on his hand while it was in the food port holding garbage. *Id.* at 834. The court reasoned that the officer who closed the food port door "had a legitimate security reason to close [it], whether [the prisoner] was actually attempting to throw the

garbage or merely holding it through the [food port] while uttering hostile words, and that in closing the door [the officer] applied only enough force to cause superficial injuries to [the prisoner's] hand." *Id.* at 839.

*Outlaw* is distinguishable. Unlike *Outlaw*, there's no evidence that Jeffery was uttering hostile words or holding an object in the food port when Zenk closed the door. Zenk is correct that he had a legitimate penological interest in closing the food port door; it's undisputed that holding a food port door open poses security risks for prison staff. *See Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (en banc) (courts must afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). But the generalized security risk from open food ports doesn't always justify slamming the port on a prisoner. The threat posed by the prisoner's conduct in *Outlaw* was immediate, but Jeffery's open port posed no such immediate threat to Zenk or other prison staff. Furthermore, Jeffery states that he suffered swelling, tearing, bleeding, bruises, and extreme pain from Zenk's use of force. Jeffery's alleged injuries are more serious than the prisoner's injuries in *Outlaw*. Those were only slight swelling and a small area of discoloration on his hand. 259 F.3d at 839.

Defendants dispute the extent of Jeffery's injuries. They contend that, at most, Jeffery suffered a moderately swollen lip, discoloration, and moderate pain from Zenk's alleged use of force. *See* Dkt. 71 at 5–6, 17. Defendants characterize these injuries as minimal and contend that minimal injuries don't support an excessive force claim. *See id.* at 17. Defendants base their conclusion that Jeffery suffered only minor injuries on: (1) his appearance in the video footage; and (2) a record of a medical visit that occurred on the day of the incident. *Id.* at 5–7.

I agree that the video footage shows Jeffery with only a swollen and somewhat discolored bottom lip. But he states in his declaration that the alleged tears, bleeding, and bruising weren't immediately visible because they were on the inside of his lip. Similarly, Jeffery states that he was swallowing the blood on the inside of his lip, which stopped it from being noticeable. As for the medical record stating that Jeffery suffered only a swollen lip, discoloration, and moderate pain, Jeffery states that it doesn't fairly report his lip injuries. Dkt. 86 ¶ 39. Jeffery insists that the nurse who saw him on the day of the incident treated only his eyebrow wound. Jeffery has submitted two messages from HSU staff stating that the only documented injury in his medical file from the date is an eyebrow injury. Jeffery also notes that the disputed medical record states that he declined acetaminophen and was allergic to Tylenol, which he basically contends is impossible because: (1) acetaminophen and Tylenol are the same medication; and (2) the nurse wouldn't have offered him a drug that she knew he was allergic to. *See* Dkt. 73-1 at 3; Dkt. 86 ¶ 39. Jeffery's evidence, which I must accept for purposes of defendant's motion, supports a reasonable inference that he suffered more than minimal injury.

Defendants contend that qualified immunity shields Zenk from liability on Jeffery's excessive force claim. In resolving questions of qualified immunity at summary judgment, courts ask whether the facts, when taken in the light most favorable to the plaintiff, show that the defendant violated a federal right, and whether the right was clearly established at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam). The test in Eighth Amendment excessive force cases has been well settled for decades: "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)); *see also Hudson*, 503 U.S. at 6. As

discussed, taking the evidence in the light most favorable to Jeffery, a reasonable juror could determine that Zenk saw his face or lip in the food port and shut the door with the intent to harm him. The alleged fact that Zenk exclaimed "Ah, gotcha" right after shutting the door deepens the "[reasonable] inference of wantonness." *See Cislo v. Martz*, No. 18-cv-3137, 2021 WL 3077886, at *3 (S.D. Ind. July 21, 2021) (denying qualified immunity on excessive force claim where defendants allegedly celebrated after use of force); *see also Hill*, 992 at 718 ("The notion that 'unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment' is not a new or unusual constitutional principle." (quoting *Whitley*, 475 U.S. at 319)). I will deny Zenk's assertion of qualified immunity on the excessive force claim, and I will deny his motion for summary judgment on the merits of the claim.

## B.  Medical care claims

Jeffery faults defendants for not getting him medical attention after Zenk closed the food port door on his lip, which he contends was a concerted effort to protect Zenk and minimize his injuries. Defendants contend that Jeffery's injuries were not serious and that, in any case, a nurse saw him after the incident with Zenk and provided appropriate treatment.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment medical care claim, Jeffery must show that he had an objectively serious medical condition that the defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017).

I begin with whether Jeffery has shown a serious medical need. Defendants contend that Jeffery's alleged lip injuries—swelling, discoloration, and moderate pain—aren't objectively

serious. If these were Jeffery's only injuries, defendants would have a good argument. *Cf. Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) ("[A] split lip and a swollen cheek [] do not rise to the level of an objectively serious medical need."). But, accepting Jeffery's evidence for summary judgment, he describes more extensive injuries than a split lip and swollen cheek. Jeffery says that Zenk caused bruises, tearing, *extreme* pain, and bleeding that was heavy enough that he had to swallow the blood to stop it from leaking from his mouth. *Cf. Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002) (complaints of serious pain related to non-trivial physical injuries are enough to show a serious medical need). Furthermore, Jeffery states that Price inspected his alleged injuries and promised to get medical attention, which suggests that they were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cf. Eagan v. Dempsey*, 987 F.3d 667, 695 (7th Cir. 2021). Jeffery's evidence is enough to support a reasonable jury finding that his alleged injuries were objectively serious.

The real issue is whether any defendant consciously disregarded Jeffery's medical need. Conscious disregard requires that the defendant is actually subjectively aware of a serious medical need. That means that the defendant knows facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant also draws that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). If a correctional officer intentionally delays or denies access to necessary medical care for a prisoner, a reasonable jury may infer conscious disregard of a serious medical need. *See Estelle*, 429 U.S. at 104–05.

I begin with Jeffery's allegations of conspiracy. Jeffery contends that defendants didn't get him medical care after the incident with Zenk "in a conspired attempt to cover [up] the [alleged] assault . . . , and to minimize the extent of [his] injuries," thus showing conscious disregard of his health. *See* Dkt. 83 at 2. I didn't allow Jeffery to proceed on a conspiracy claim, because it was based on Jeffery's "bare assertion that the defendants who allegedly provided inadequate medical care did so to cover up the alleged assault." Dkt. 9 at 3.

In any case, there's no evidence that defendants conspired to deprive Jeffery of health care. Jeffery states that the medical record of his receiving lip treatment is fabricated, but he doesn't specify which defendants, if any, were responsible for that result. Dkt. 86 ¶ 39; *see Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation." (alteration adopted)). Jeffery's brief in opposition and response to defendants' proposed findings of fact contain a few references to a conspiracy. *See* Dkt. 83 at 2, 7; Dkt. 84 ¶ 62. But these references lack any supporting factual detail, so they aren't enough to support a reliable inference that defendants reached a meeting of the minds to deprive Jeffery of medical care. *See Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017); *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). The bare assertion of a coverup in Jeffery's complaint is equally insufficient. Dkt. 1 ¶ 21.

I turn now to Jeffery's direct allegation that Zenk, Price, Glass, and Schultz each denied him access to medical care even though they knew about the alleged assault. I treat Zenk, Price, and Glass together because Jeffery's medical care claim against them turns on the same considerations.

11

No reasonable juror could conclude that Zenk, Price, or Glass consciously disregarded Jeffery's alleged lip injuries. Jeffery contends that he suffered swelling, discoloration, tearing, bleeding, bruises, and extreme pain after the incident with Zenk. But the video evidence shows that, of these injuries, only lower lip swelling and discoloration were visible. Furthermore, there's no evidence that Jeffery told Zenk, Price, or Glass that he was in extreme pain, and he displays no apparent sign of pain or other medical distress in the video footage. Even if Jeffery suffered tearing, bleeding, bruises, and extreme pain after Zenk allegedly closed the food port door on his lip, the evidence doesn't show that Zenk, Price, or Glass knew of those injuries and thought that he required immediate medical attention. Regoli's remark that he told Price that Jeffery's lip was "busted" isn't enough to infer that Price thought that Jeffery was seriously injured. Furthermore, Glass informed Jeffery that he could submit an HSU request for his lip problem, and the evidence shows that Jeffery knew how to complete that task. *See* Dkt. 86-2 at 1–4; *see also* Dkt. 77-7 (0:24–0:37). Jeffery contends that defendants violated a Wisconsin Department of Corrections use-of-force policy by not ensuring that he received a medical assessment after the alleged assault. Dkt. 68 ¶ 42; Dkt. 86-4. "But [an alleged] violation of a prison policy alone does not . . . suggest deliberate indifference." *See Schroeder v. Sawall*, 747 F. App'x 429, 431 (7th Cir. 2019). In short, no reasonable juror could conclude that Zenk, Price, or Glass consciously disregarded serious injuries to Jeffery's lip. I will grant summary judgment to Zenk, Price, and Glass on Jeffery's medical care claim.

By contrast, there's evidence that Schultz knew the full extent of Jeffery's alleged lip injuries. Jeffery states that Schultz inspected and recorded the alleged injuries on the inside of his lip and assured him that he would be seen by HSU staff. *See* Dkt. 86 ¶ 33. Jeffery also states, and there's enough evidence to infer, that Schultz intentionally failed to contact the

HSU and that this failure contributed to a delay of several hours before Jeffery received any medical care. *See id.* ¶¶ 35, 39; Dkt. 86-2 at 1, 3, 5–6. This evidence supports a reasonable determination that Schultz consciously disregarded Jeffery's alleged lip injuries.

That leaves causation. Jeffery's alleged injuries, as he tells it, were caused by Zenk's alleged closing of the food port door on his lip. But, to prevail on his medical care claim against Schultz, Jeffery must go a step further and show that Schultz's conscious disregard "exacerbated" his injuries or "unnecessarily prolonged [his] pain." *See Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016) (en banc). Jeffery doesn't have much evidence on causation. But Jeffery states that these injuries were "extremely painful." Dkt. 86 ¶ 16. If that's true, Schultz's failure to get prompt medical help caused him to suffer "many more hours of needless suffering for no reason." *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Jeffery isn't precise about timing, but there's reason to think that he wouldn't have experienced severe pain for several hours. HSU staff may have been able to mitigate Jeffery's pain with a pain reliever or other treatment.

Defendants contend that qualified immunity protects Schultz from liability on Jeffery's medical care claim. As with the claim against Zenk, if I accept Jeffrey's version of the facts, as I must on summary judgment, Schultz violated clearly established rights, and he is not entitled to qualified immunity. In cases like this one involving a straightforward application of the test for conscious disregard, the court of appeals has been reluctant to find that qualified immunity should apply. *E.g., Estate of Clark v. Walker*, 865 F.3d 544, 552–53 (7th Cir. 2017); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012); *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). This is because the merits and qualified immunity analyses may effectively collapse into one, and if there are genuine issues of fact concerning the elements of an Eighth

Amendment claim, a defendant may not avoid trial on the basis of qualified immunity. *Walker*, 293 F.3d at 1037.

As discussed, the extent of Jeffery's injuries and whether Schultz knew about those injuries are genuinely disputed. I will deny defendants' request for qualified immunity on this claim, and I will deny defendants' motion for summary judgment on the merits.

CONCLUSION

This case is going to trial on Jeffery's excessive force claim against Zenk and on his medical care claim against Schultz. To help Jeffery prepare for trial, I will soon issue a separate trial preparation order that provides detailed information about how trial works and how Jeffery should prepare. Jeffery will have to review the trial preparation order carefully and notify defendants' counsel or the court if he has specific questions about preparing for trial.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 70, is GRANTED in part and DENIED in part, with the result that summary judgment is:

    - DENIED to defendant Zenk on plaintiff's Glen R. Jeffery, Jr.'s excessive force claim against him;

    - GRANTED to defendants Zenk, Glass, and Price on plaintiff's medical care claim against them; and

    - DENIED to defendant Schultz on plaintiff's medical care claim against her.

2. Plaintiff's medical care claims against Zenk, Glass, and Price are DISMISSED with prejudice.

14

3.  The clerk of court is directed to send plaintiff a copy of this order.

Entered May 15, 2024.

                                          BY THE COURT:

                                          /s/

                                          _____

                                          JAMES D. PETERSON
                                          District Judge