IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

                    Plaintiff,                              PRETRIAL ORDER

        v.

KYLE ZENK and GWEN SCHULTZ,                                22-cv-641-jdp

                    Defendants.

---

Plaintiff Glen R. Jeffery, Jr., without counsel, alleges that defendant Kyle Zenk intentionally shut a food port door on his lip, and that defendant Gwen Schultz didn't follow through on her promise to him to get him medical attention for his injured lip. Jeffery brings an Eighth Amendment excessive force claim against Zenk and an Eighth Amendment medical care claim against Schultz. Trial is set for July 15, 2024. I will hold a final pretrial conference by Zoom on July 3, 2024, at 10:00 a.m.

This order addresses various pretrial filings, including the parties' motions in limine. Also, I have attached drafts of the introductory jury instructions, voir dire, posttrial instructions, and verdict form in advance of the July 3 conference. The parties must review these drafts and be prepared to raise any objections to them at the conference. To ensure that Jeffery has these materials before the final pretrial conference, counsel for defendants is directed to *immediately* contact the appropriate official at Racine Correctional Institution and work with that individual to ensure that Jeffery receives copies of these materials without delay.

**A.  Defendants' motions in limine (Dkt. 109 and Dkt. 123)**

Defendants have filed two documents containing seven motions in limine. I denied Jeffery's motion for an extension of time to respond to these motions, but I instructed him to be prepared to respond to them at the July 3 conference. I am issuing these rulings today, but I will reconsider any rulings as necessary based on arguments presented at that conference. I begin with the first document, Dkt. 109, which contains defendants' first six motions.

First, defendants contend that Jeffery shouldn't be able to question them about "the details of other legal cases in which they have been involved that are unrelated to their interactions with [him in this case], other inmate grievances not related to this case, or their work file history." Dkt. 109 at 1. I will grant this motion. Jeffery hasn't proffered any such evidence, and there is no indication that such evidence would be admissible.

Second, defendants contend that Jeffery shouldn't be allowed to "advance any argument, questions, testimony, or evidence regarding the details of lawsuits relating to the Department of Corrections . . . , or any other DOC employees." Dkt. 109 at 3. I will grant this motion. Jeffery hasn't proffered any such evidence, and there is no indication that such evidence would be admissible.

Third, defendants contend that Jeffery shouldn't be allowed to argue that Zenk used excessive force on him because Jeffery had previously filed a complaint under the Prison Rape Elimination Act (PREA) against another officer that Zenk was familiar with. *See* Dkt. 109 at 4–5. I will grant this motion. I didn't allow Jeffery to proceed on a retaliation claim against Zenk, and the summary judgment evidence didn't support that theory. Even if there were admissible evidence that Zenk used excessive force on Jeffery because of the subject

inmate complaint, its marginal relevance would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403.

Fourth, defendants seek to exclude argument that a medical record stating that nondefendant Nurse Amimo treated Jeffery's lip was fabricated. *See* Dkt. 109 at 5. I didn't allow Jeffery to proceed on his claim that defendants conspired to deprive him of medical care, and the summary judgment evidence didn't support that theory. Dkt. 91 at 11. I will grant this motion if Jeffery seeks to argue that there was a conspiracy to fabricate Amimo's medical record.

I will otherwise deny this motion. Jeffery submitted two messages from nursing staff stating that the only documented injury in his medical file from the relevant date is an eyebrow injury. Dkt. 86-1 at 1, 3. Jeffery also contends that Amimo's medical record is irregular because it contains advice that no competent nurse would have given. *See* Dkt. 73-1 at 3; Dkt. 86 ¶ 39. Jeffery deserves some leeway to argue that the medical record is unreliable and doesn't accurately report the treatment that he received on the day in question.

Fifth, defendants contend that Jeffery shouldn't be able to argue that Zenk used excessive force on him because he failed to get him medical care after he shut the food port door on his lip. *See* Dkt. 109 at 5–6. I will deny this motion. Jeffery says that he suffered tearing, bleeding, bruises, and extreme pain after Zenk closed the food port door on his lip. If Jeffery can establish that fact, Zenk's alleged failure to get medical care would be relevant to show that he intentionally shut the food port door on Jeffery's lip to harm him. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986) (holding that "any efforts made to temper the severity of a forceful response" are relevant to show whether a prison official's use of force is excessive).

Sixth, defendants ask for permission to cross-examine Jeffery on conduct reports that he has received for lying. Dkt. 109 at 6–7 (discussing Fed. R. Evid. 608(b)). Defendants don't

seek to admit the actual conduct reports, but they contend that cross-examination about these disciplinary violations is appropriate under Rule 608(b).

Defendants have submitted evidence that Jeffery has been found guilty of lying four times in prison disciplinary proceedings. *See* Dkt. 110. In January 2021, Jeffery was found guilty of lying in a PREA complaint that a staff member sexually assaulted him. Dkt. 110-1. In August 2021, Jeffery was found guilty of lying to prison staff that he wanted to use the telephone to make a PREA complaint when his calls were not PREA-related. Dkt. 110-2. In October 2023, Jeffery was found guilty of lying in a psychological services request that a staff member asked Jeffery to share fentanyl with that individual. Dkt. 110-3. In November 2023, Jeffery was found guilty of lying in a PREA complaint that a staff member looked up his segregation smock. Dkt. 110-4.

As a general rule, Rule 608(b) allows cross-examination regarding specific instances of misconduct if they are probative of a witness's character for truthfulness or untruthfulness. *Harris v. Devendorf*, No. 14-cv-47-wmc, 2017 WL 2656466, at *2 (W.D. Wis. June 20, 2017). Prison disciplinary violations for lying can be probative of untruthfulness. *See id.* But the relevance of a disciplinary violation for lying may depend on a variety of factors, such as the frequency of the dishonesty, how long ago the dishonesty occurred, the similarity of the conduct underlying the disciplinary charge to the conduct underlying the prisoner's federal claims, and whether the prisoner had a fair opportunity to context the disciplinary charge. *See Northern v. Hentz*, 10-cv-120-jdp, Dkt. 157 at 2.

Jeffery has been found guilty of lying four times, which suggests pattern of dishonesty. The disciplinary violations involved conduct that occurred between January 2021 and November 2023, which is recent enough to support their relevance. The conduct underlying

those disciplinary actions is different from the conduct at issue in this case, and it's unclear whether Jeffery challenged those violations. However, nothing in the record suggests that prison officials didn't give Jeffery a fair opportunity to challenge those violations. As a whole, defendants' evidence shows that the disciplinary violations are probative of Jeffery's character for untruthfulness.

I will grant this motion. Defendants may elicit cross-examination that Jeffery was found guilty of lying in four disciplinary proceedings. But defendants may not admit the disciplinary violations or suggest that they are indicative of his character for misbehaving.

In the seventh motion in limine, Dkt. 123, defendants seek to exclude any reference to an incident that took place the day after Zenk closed the food port door on his lip. During that incident, Jeffery threatened to harm himself unless he could speak with a psychiatrist and correctional official about his belief that he was being retaliated against by a staff member related to a PREA report. I will grant this motion because any reference to this incident would be irrelevant and unfairly prejudicial. *See* Fed. R. Evid. 401, 403.

**B.  Jeffery's motions in limine (Dkt. 119; Dkt. 120; Dkt. 121; Dkt. 122)**

Jeffery has filed four separate motions in limine. Defendants filed a single response to each motion. Dkt. 131.

First, Jeffery asks the court to treat the witnesses employed by the DOC as adverse witnesses so that he can ask them leading questions. Dkt. 119. In his witness list, Jeffery identifies: Zenk, Schultz, Officer Luke Regoli, Nurse Brenda Roehrborn-Dorau, and his cellmate William Weso. Dkt. 115. Defendants do not object to my treating Zenk, Schultz, and Regoli as adverse witnesses. I will grant Jeffery's motion to treat these individuals as adverse witnesses.

5

Defendants object to treating Roehrborn-Dorau as an adverse witnesses because: (1) she works for a third-party agency that contracts with the DOC to provide medical services, meaning she's not a DOC employee; and (2) she was not involved in the events underlying Jeffery's claims. Dkt. 131 at 2. Jeffery hasn't shown that Roehrborn-Dorau is a DOC employee, and her only role in this case was to answer a question that he asked about his medical records after the events at issue occurred. I will deny Jeffery's motion to treat Roehrborn-Dorau as an adverse witness.

That leaves Weso. Jeffery concedes that it would be mostly inappropriate to treat Weso as an adverse witness, but he asks for permission to give him the date of the incident with Zenk because it occurred over three years ago. I will deny Jeffery's motion to treat Weso as an adverse witness as unnecessary. But as a general matter, directing a defendant's attention to a particular date is not leading.

Second, Jeffery asks the court to exclude any expert testimony on the injuries that he sustained during the incident with Zenk. Dkt. 120. Jeffery admits that it would be appropriate for Amimo, who defendants contend treated him after the incident, to testify as an expert. *See id.* But, if she does, Jeffery asks for permission to treat Amimo as an adverse witness.

I will deny this motion as moot. Amimo is the only witness who defendants contend may provide expert testimony, and they will present her testimony at trial in the form of a videotaped deposition.[1] Defendants accept that Jeffery can ask her leading questions during the deposition.

---

[1] Defendants filed a separate notice of intent to conduct a trial deposition of Amimo based on her unavailability starting on July 2, 2024. Dkt. 129. Jeffery hasn't objected to that notice.

Third, Jeffery asks me to allow him to appear in the courtroom unshackled and in appropriate civilian attire. Dkt. 121. Defendants don't object to Jeffery appearing in civilian attire if he obtains those clothes on his own. I will grant this motion and allow Jeffery to appear in appropriate civilian attire, provided that he can obtain it on his own. I gave Jeffery instructions on how to arrange to wear street clothes in my trial preparation order. Dkt. 92 at 12–13.

I will deny Jeffery's motion to appear in the courtroom without any restraints or a stun belt. Jeffery has been convicted of armed robbery and felony battery by prisoners, and he has been found guilty of assaulting employees multiple times while incarcerated. *See* Milwaukee County Case No. 2017CF2054; Columbia County Case No. 2023CF378; Dkt. 132 and attachments. Due to Jeffery's history of violence, it is appropriate for him to be restrained with a stun belt during trial. But I will take precautions so that his restraints are not visible to the jury.

Fourth, Jeffery asks me to sequester all of Zenk's and Schultz's witnesses from the courtroom, and to prevent DOC employees from appearing in the courtroom in work uniforms. Dkt. 122. Jeffery also appears to ask me to order the U.S. Marshals Service to transport him to court. *See id.* I will grant this motion to exclude Regoli and any other DOC employee who will be testifying in person from the courtroom until the witness has provided his or her testimony. *See* Fed. R. Evid. 615. Regoli isn't a party, and defendants didn't say that he will attend the entire trial. But, as explained below, I will ask counsel for defendants if counsel can ensure his presence for trial because he is a key witness. I will deny as moot the request to exclude Roehrborn-Dorau from the courtroom because, as I will explain below, her testimony isn't needed.

7

I will deny Jeffery's request for the U.S. Marshals Service to transport him to court because it's not responsible for that task. *Lindell v. Boughton*, No. 18-cv-895-slc, 2021 WL 4893387, at *7 (W.D. Wis. Oct. 20, 2021). I will mostly deny Jeffery's request to prevent DOC employees from appearing in the courtroom in standard work uniforms. Zenk, Schultz, and Regoli were on duty when the events at issue occurred, and the jurors will know that they are correctional staff. *Cf. Sughayyer v. City of Chicago*, No. 09-cv-4350, 2011 WL 2200366, at *4 (N.D. Ill. June 6, 2011) (police officers allowed to wear uniforms at trial because they "were wearing their uniforms when they allegedly committed the acts that are the subject of the lawsuit and [were] being sued as police officers"). But I will grant this motion to exclude any testifying DOC employee from wearing a special or ceremonial uniform, or any ribbons, medals, awards or other honorary or commemorative uniform accessory. *Cf. Owens v. Ellison*, No. 13-cv-7568, 2017 WL 1151046, at *6 (N.D. Ill. Mar. 28, 2017) (collecting cases where courts prohibited officers from wearing medals at trial). I will also grant this motion to preclude any testifying DOC witness from wearing any protective gear or duty belts, and from carrying any firearms, and any DOC employee present in the courtroom from wearing any excessively protective gear. I will ensure that any DOC employee responsible for Jeffery's security doesn't create the impression that he is a threat to courtroom safety.

## C. Jeffery's motion for writ of habeas corpus ad testificandum (Dkt. 96)

Initially, Jeffery moved the court to issue a writ or subpoena for the following individuals to testify: (1) Zenk; (2) Schultz; (3) Regoli; (4) Sean Price; (5) Michael Glass; (6) Justin Douglas; (7) C. Baird; and (8) Weso. Dkt. 96. Jeffery later clarified that he wished to call only Zenk, Schultz, Regoli, Roehrborn-Dorau, and Weso as witnesses. Dkt. 115.

8

Jeffery says that asking Officer Regoli to testify voluntarily may subject Jeffery to disciplinary measures. Regoli is a key witness. It's appropriate to ask counsel for defendants during the final pretrial conference if counsel can ensure Regoli's presence at trial. If that cannot be arranged, I will grant Jeffery's request to subpoena Regoli and we'll have him testify by videoconference to avoid mileage fees. Jeffery has clarified that he doesn't wish to present Price, Glass, Douglas, or Baird as witnesses, so those requests are moot.

Roehrborn-Dorau's involvement is limited to answering a question about Jeffery's medical records, and her response to that health services request is in the record. Roehrborn-Dorau could provide very little relevant testimony, and documents containing her response are already in the record. Instead of imposing the burden on her of testifying in person, and to avoid subpoena-related fees, I'll ask defendants if they will stipulate to the admissibility of the subject health services requests and responses. *See* Dkt. 86-2 at 1, 3. If defendants won't stipulate to the admissibility of these documents, we'll have Roehrborn-Dorau testify by videoconference. Along those lines, a writ is unnecessary for Jeffery's cellmate Weso, whom we'll have testify by videoconference. Jeffery's motion is moot regarding Zenk and Schultz because they will be attending the entire trial. Dkt. 98.

ORDER

IT IS ORDERED that:

1. Defendants' first six motions in limine, Dkt. 109, are GRANTED in part and DENIED in part as discussed above.

2. Defendants' seventh motion in limine, Dkt. 123, is GRANTED.

3. Plaintiff's motions in limine, Dkts. 119–122, are GRANTED in part and DENIED in part as discussed above.

4. Plaintiff's motion for writ of habeas corpus ad testificandum, Dkt. 96, is GRANTED in part and DENIED in part as discussed above.

5. To ensure that Jeffery has these materials before the final pretrial conference, counsel for defendants is directed to immediately contact the appropriate official at Racine Correctional Institution and work with that individual to ensure that Jeffery receives copies of this order and the attached materials without delay.

Entered July 1, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

10